IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| T. CRAIG ANDERSON,<br><br>　　Plaintiff,<br><br><br><br><br>vs.<br><br><br><br>ALTIUS HEALTH PLANS, INC.,<br><br>　　Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br>Case No. 2:04-CV-96 TS |

I.  INTRODUCTION

In this ERISA[1] case, Plaintiff Craig Anderson (Anderson) challenges the denial of his claim for health care benefits for mesenteric vein thrombosis (MVT) by Defendant Altius Health Plans (Altius), on the grounds that the standard of review is de novo and that, under any standard, his treatment for MVT is not excluded from coverage as a complication of his uncovered gastric bypass surgery.  Altius moves for summary judgment, arguing that

---

[1] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*.

the standard is arbitrary and capricious.  It further contends that, under any standard, its decision was supported by substantial evidence and was correct.

The Court finds that the standard of review is de novo.  Without deference to Altius' decision and without affording it any presumption of correctness, the Court finds that, based upon the record before it at the time the decision was made, Altius' decision that Anderson's treatment for MVT is excluded from coverage is correct.  Accordingly, the Court grants Altius' Motion for Summary Judgment and denies Altius' alternative Motion for Judgment on the Administrative Record, as moot.

## II.  UNDISPUTED FACTS

The only fact that is disputed is the source of handwriting on the Physician Review Form. The parties dispute the "characterization" or meaning of the undisputed facts.  The undisputed facts are as follows:  Anderson is an eligible employee who is covered by an ERISA-qualified health care insurance policy through his employer.  Altius provides health care insurance to Anderson's employer in the form of a Group Subscriber Agreement (Agreement).  The Agreement contains the following exclusion: "Surgical treatment for obesity (including morbid obesity) and/or complications therefrom, including a reversal of these surgeries."[2]

Anderson applied for benefits for a gastric bypass and Altius denied that claim. Anderson had gastric bypass surgery, paid for those expenses himself, and does not appeal that decision.

---

[2]Rec. at 156.

Shortly after the bypass, Anderson began to have problems. The same day he was released, he was readmitted to the hospital with a fever. A CT scan was performed and Anderson was released after an additional two-day stay. Eleven days after the surgery he began to experience abdominal pain. Thirteen days after the surgery he presented at the emergency room complaining of the abdominal pain and was readmitted. A CT scan showed that he had MVT.[3] The CT scan report references his CT scan eleven days earlier and states: "when compared with the prior examination there has been development of thrombus involving the superior venous."

Anderson was hospitalized for approximately four days for treatment of the MVT. His Patient Abstract for the stay lists the reason for the hospitalization as "Post op infection," "post op complications" and "nosocomial infection."[4]

Anderson filed a claim for benefits for his treatment of MVT. Altius denied the claim on the grounds that it was not a covered plan benefit pursuant to the exclusion. Anderson appealed. He submitted letters from three physicians to support his appeal.

All of Plaintiff's supporting letters from three physicians opine that his MVT could be a complication of his surgery, but also opine that it could be related to his obesity. His internal medicine doctor opined that "[i]t is unclear at this point whether the clotting problem

---

[3]MVT is explained "in simple terms" in one doctor's deposition as "essentially a blood clot developing in the vein that drains the intestine." Taylor Dep. at 33.

[4]Rec. at 39.

3

was related to his obesity or was somehow related to the surgery,"[5] but did not offer any opinion on whether Anderson had hypercoagulability.

Another of Anderson's doctors opined:

It is well known that patients who are obese have a markedly elevated risk for spontaneous thromboembolic events such as deep venous thrombosis or pulmonary embolism. . . . . While thrombolytic events such as deep venous thrombosis, pulmonary embolism, and superior mesenteric vein thrombosis can occur after a variety of surgical procedures, these events can also develop spontaneously in patients who are hypercoagulable. People who are morbidly obese are hypercoagulable based on several studies of their medical well-being.[6]

The vascular and thoracic surgeon who treated Anderson's MVT opined:

A superior mesenteric vein thrombosis is a very uncommon occurrence. It is a complication of any type of abdominal surgery particularly a bowel resection, most frequently seen with splenectomy but can indeed be a spontaneous occurrence particularly in hypercoagulable patients. Morbidly obese patients are hypercoagulable just by definition of obesity, as almost all morbidly obese patients have a relative antithrombin II deficiency and are at risk of superior mesenteric vein thrombosis.

I think it is impossible to know for sure whether this superior mesenteric vein thrombosis was directly related to his gastric bypass surgery or whether it was incidental to his hypercoagulability. I cannot make a clear determination of which that would be. It certainly did occur in the postoperative period but may or may not have been related. I have no further input on the cause of this.[7]

The three letters submitted by Anderson were reviewed by Altius' Medical Director, a medical doctor, who reviewed Anderson's medical records and determined that there was no history of hypercoagulable state. The Medical Director opined that there was

---

[5]*Id.* at 16.

[6]*Id.* at 17.

[7]*Id.* at 14-14A.

4

cause and effect between the surgery and the MVT because MVT, while uncommon, "is known to be a complication of abdominal surgery" and it occurred shortly after an abdominal procedure.[8]  He further opined that coverage for the MVT should be denied because it was a complication of a non-covered gastric bypass surgery.  However, he also noted that "a review of this case to determine likely causation of the [MVT] is reasonable and can be approved."[9]

Altius sent two issues for an independent medical review by Verity Pharmaceutical and Medical Review (Verity): One, whether the MVT was a complication of the gastric bypass surgery.  Two, whether the emergency admission for the MVT should be covered.

Verity's president, Dr. Taylor, conducted the review.  He consulted medical literature and formed a panel (the Verity Panel) consisting of himself, a board certified thoracic surgeon and professor of medicine at the University of Utah, a board certified general surgeon, a board certified vascular surgeon and faculty member at the University of Utah's medical school, and a board certified family practitioner.

The Verity Panel concluded that the probability was much higher that the MVT was caused by abdominal surgery than that it occurred spontaneously by his obesity.  After his initial research of medical literature, Dr. Taylor wrote in the Physician Review Form: "I cannot arrive at a causal relationship between the pts recent surgery & the [MVT].  This complication is reported after abdominal surgery, but may also occur spontaneously."

---

[8] *Id.* at 22.

[9] *Id*.

However, after consulting with the other Panel members and learning that two had never seen MVT that was not associated with a previous abdominal surgery, he added the word "rarely" following the above-quoted statement.[10] The Physician Review Form further states: "Highest probability of a complication of surgery rather than spontaneous occurrence."

Together with the Physician Review Form, Dr. Taylor submitted to Altius the following summary of the Verity Panel's conclusions:

> After careful consideration of the medical records . . . and consultation with a board certified family physician, cardiovascular surgeon, general surgeon and vascular surgeon, it is our opinion that the highest probability [is that MVT is a] complication of gastric bypass for [venous] thrombosis as stated in the following paragraph.
>
> The rationale for this determination provided by the consultants is they concluded the etiology [of] the [MVT] [as] a result of intestinal surgery as the incidence of spontaneous [MVT] is very very rare even in the face of an obesity induced hyper-coaguable state. So it is far far more likely that this is a complication of the gastric bypass surgery as the onset of complication began on the second post-op day and others presented under the diagnosis of the [MVT] on the [later] C.T. scan. These later complications are also considered to be a higher probable cause of his "thrombosis" than a random spontaneous "thrombosis." Multiple opinions and review of medical literature and information sources indicate this has the highest probability of being a complication [of] the surgery.[11]

As a result of the Verity Panel's opinion, Verity responded to Altius' question of whether the MVT was a complication of the abdominal surgery with "most likely," "yes," and "see letter," meaning the above-quoted letter.

---

[10]Taylor Dep. at 50, 53.

[11]Rec. at 28.

Based on the information from Verity, Altius denied the claim. Anderson appealed a second time and Altius again denied the claim.

## III. STANDARD OF REVIEW

A "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[12]

Anderson contends that because the Agreement in this case does not define "plan" nor does it expressly designate a plan administrator or fiduciary, the de novo standard applies. Altius contends that the Agreement's grant of discretion includes a grant of discretion to itself as the plan administrator because under Tenth Circuit case law, the use of the word "plan" refers to the "plan administrator."

The Agreement provides that the "Plan has sole and exclusive discretion in interpreting benefits covered under this plan, including terms, conditions limitations and exclusions."[13] However, the Agreement does not define "Plan" as the plan administrator, nor does it name a plan administrator or fiduciary.

The Court finds that the Agreement does not clearly designate the plan administrator. Some sections of the Agreement refer to Altius and also separately to the "Plan." "Plan" appears to be generally defined for the purposes of the coordination of

---

[12] *Hall v. Unum Life Ins. Co. of America,* 300 F.3d 1197, 1200 (10th Cir. 2002) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

[13] Rec. at 142.

7

benefits section[14] while Altius is referred to generally as "Altius."[15] The Agreement also provides that Altius is not assuming any plan administrator function or role for the "Group," meaning the employer,[16] by the Agreement.[17] Although it is not designated the plan administrator, Altius maintains the appeals process,[18] and its contention in this case is that its decision as both the plan and the plan administrator should be afforded discretion.[19]

The Court finds that the cases relied upon by Altius are inapposite as, in each of those cases, the Plan or its representative was expressly named or designated as the administrator or fiduciary.[20] Further, regardless of whether courts have occasionally used the word "plan" to refer to "plan administrator" when discussing the issue of standard of

---

[14] *Id.* at 135.

[15] *E.g.* Rec. at 134, Section III (member liability, coordination of benefits provisions and grievance procedures).

[16] "Group" is defined in the agreement as the entity that entered into the Agreement with Altius, Anderson's employer. *Id.* at 127 ¶ 18 and 126.

[17] *Id.* at 149 at ¶ 9.

[18] *Id.* at 182.

[19] *E.g.* Def.'s Mem. at 14-16.

[20] *See Winchester v. Prudential Life Ins. Co.*, 975 F.2d 1479, 1483 (10th Cir. 1992) (applying arbitrary and capricious standard where insurance company acted as "claim administrator" and also retained to itself the exclusive right to interpret the provision of the plan); *Grosvenor v. Qwest Commc'ns Int'l*, 191 Fed.Appx. 658, at *659, 2006 WL 2076804, at *1 (10th Cir. 2006) (finding that the Plan designated the Qwest Employee Benefits Committee as the Plan Administrator); *Macklin v. Ret. Plan for Employees of Kan. Gas & Elec. Co.*, 99 F. 3d 1150, 1996 WL 579940 *1 (naming committee acting as Administrator and named Fiduciary of the Retirement Plan and also noting that the plaintiff did not contest the use of the arbitrary and capricious standard).

review,[21] it does not change the rule that the Court considers the plain language of the plan at issue in determining whether or not there is a grant of discretion to a plan administrator or fiduciary. Having done so, the Court finds that there is no clear grant of discretion to Altius as a plan administrator and, therefore, it will apply the de novo standard of review.

> In conducting a *de novo* review, the district court's "role is to determine whether the ERISA plan administrator made a correct decision based on the record before it at the time the decision was made." In making this determination, the district court "reviews the administrator's decision without deference to that decision and without any presumption of correctness."[22]

When conducting a de novo review, the Court is ordinarily restricted to the administrative record, but may supplement that record "when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision."[23]

> The party seeking to supplement the record bears the burden of establishing why the district court should exercise its discretion to admit particular evidence by showing how that evidence is necessary to the district court's de novo review. Moreover, the district court "should only admit the additional evidence if the party seeking to introduce it can demonstrate that it could not have been submitted to the plan administrator at the time the challenged decision was made;" however, "cumulative or repetitive" evidence should not be allowed.[24]

---

[21] *E.g. Alves v. Silverado Foods, Inc.*, 6 Fed. Appx. 694, 696, 699 (10th Cir. 2001) (discussing *Cagle v. Bruner*, 112 F.3d 1510, 1520 (11th Cir. 1997), wherein the trustees of the Plan were expressly granted discretionary necessary to trigger arbitrary and capricious standard).

[22] *Gilbertson v. AlliedSignal, Inc.*, 172 Fed.Appx. 857, *860, 2006 WL 775171, at *2 (10th Cir. 2006) (quoting *Hammers v. Aetna Life Ins. Co.,* 962 F.Supp. 1402, 1406 (D. Kan.1997)).

[23] *Hall,* 300 F.3d at 1203 (quotation omitted).

[24] *Gilbertson*, 172 Fed.Appx. 857, at 861-62 (quoting *Hall*, 300 F.3d at 1202).

Anderson challenges the authenticity of a document in the administrative record by contending that the Physician Review Form was "altered" by "someone,"[25] who handwrote additional materials stating a conclusion contrary to that of the actual reviewer hired by Altius[26] and that, therefore, Altius' "bad faith" can be inferred from such an alteration.[27] For this reason he contends that, despite the Altius Panel's written conclusion, the administrative record does not demonstrate that coverage should be denied.[28]

During this case, the parties conducted limited discovery including the deposition of Dr. Taylor.[29] Altius contends that the Taylor deposition should be considered if the Court conducts a de novo review. Although Anderson was the party that originally sought and obtained an order allowing the limited discovery,[30] and continues to assert that the Physician Review Form was altered, he simultaneously opposes consideration of the deposition on the ground that it was not part of the administrative record.[31]

In view of Anderson's continuing challenge to the authenticity of the disputed statement on the Physician Review Form, the information from the deposition is highly

---

[25] Pl.'s Mem. at 8 and 10.

[26] *Id.* at 8.

[27] *Id.* at 10.

[28] *Id.* at 8.

[29] *Id.* at 8 and 10.

[30] Docket Nos. 16 (Order Granting Plaintiff's Motion to be Allowed to Conduct Discovery) and 25 (Order Denying Plaintiffs' Motion to Prevent Deposition).

[31] Pl's Mem. at 12-13.

relevant to Anderson's current challenge to Altius' denial of benefits. The information is neither cumulative nor repetitive. Anderson's authenticity challenge was not made until this case was filed and, therefore, Altius has shown that the deposition evidence regarding the source and timing of the disputed statement was not available to the persons making the appeal decision. The Court finds that Altius, as the party seeking to supplement the record, has met its burden of establishing that the Court should exercise its discretion to admit the deposition.[32] Accordingly, the Court will allow the administrative record to be supplemented with the Taylor deposition insofar as it addresses the disputed statement.

The supplemental information from the Taylor deposition is that the disputed statement on the Physician Review Form was filled out by Dr. Taylor prior to the Form being provided to Altius.[33]

The Court is allowing this limited supplementation to the record for the purpose of resolving the challenge to the authenticity of a part of the administrative record. Because such resolution of the allegation of bad faith alteration of part of the administrative record is necessary to determining whether or not Altius' decision was correct based on that record, the Court will deny the Motion for Judgment on the Administrative Record and will proceed to the Motion for Summary Judgment.

---

[32]*Gilbertson*, *supra*.

[33]Taylor Dep. at 50, 75.

11

## IV.  SUMMARY JUDGMENT STANDARD

The standard for summary judgment under Fed. R. Civ. P. 56 is well known:

> Summary judgment is proper only if there is no genuine issue of material fact for determination, and the moving party is entitled to judgment as a matter of law. . .. We review the entire record on summary judgment . . . in the light most favorable to the party opposing summary judgment.[34]

The Court finds that the only issue of material fact raised by Plaintiff involves the timing and authenticity of the disputed statement on the Physician Review Form. As noted above, the supplemental evidence is that the information was written by a member of the Verity Panel after it conducted its review and before the document was provided to Altius. This evidence has not been refuted by Anderson. Thus, there is no evidence of an alteration, much less a bad faith alteration. Although the parties dispute their respective characterizations of, and interferences drawn from, the remaining facts, the facts themselves are not disputed.

## V.  DISCUSSION

Because the supplemental evidence shows that the Physician Review Form was not altered, the Court now turns to the issue before it under de novo review — whether the denial of benefits was a correct decision based on the record at the time the decision was made. In making its determination, the Court has carefully reviewed all of the record at the time the decision was made, including the Physician Review Form.

---

[34] *Durham v. Herbert Olbrich GMBH & Co.*, 404 F.3d 1249, 1250 (10th Cir. 2005) (quoting *Riley v. Brown & Root, Inc.,* 896 F.2d 474, 476 (10th Cir. 1990)).

Anderson contends that the coverage decision was not correct for the following reasons: the person making the decision did not take into account the medical opinions that MVT could be the result of a hypercoagulable state; Dr. Taylor's recommendation is based on the erroneous assumption that the complications arose two days after the operation; coverage should be decided in favor of the insured; the exclusion only excludes surgical costs and not costs for treating complications; and the policy is ambiguous as to emergency treatment and, therefore, should be construed in favor of coverage.

Addressing the first contention, the Court finds that Altius' decision did take into account the medical opinions that MVT could be the result of a hypercoagulable state but, based upon the Verity Panel's review and opinion, concluded that it was a complication of the surgery. Anderson's own doctors did not opine that his MVT was caused by a hypercoagulable condition or that he had such a condition. They only opined that it could be so caused.

As to Dr. Taylor's statement that the complications started two days post op, although the two-day complication was fever, it was nonetheless a complication. Even Anderson's own doctor's opinion was that MVT's occurrence thirteen days after surgery, "certainly did occur in the postoperative period."[35]

Anderson's next arguments are all based on his assertion that the policy is ambiguous. The Court finds that the policy's exclusion is not ambiguous and that it

---

[35]Rec. at 14-14A.

unambiguously excludes coverage for obesity surgery and for treatment of complications of obesity surgery.

As to the argument that the treatment should not be excluded because it was in the nature of emergency treatment, Anderson does not show where in the administrative record he made such a claim. Therefore, it is not properly before the Court as it was not a claim submitted to Altius.

Having conducted a de novo review, the Court finds that Altius' denial of benefits was a correct decision based on the record at the time the decision was made.

## VI.  ORDER

Based upon the foregoing, it is therefore

ORDERED that Defendant Altius' Motion for Judgment on the Administrative Record (Docket No. 30) is DENIED as moot. It is further

ORDERED that Altius' Motion for Summary Judgment (Docket No. 30) is GRANTED. The clerk of court is directed to enter judgment in favor of Defendant Altius and against Plaintiff Anderson on all claims and close this case.

DATED  January 12, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge